By the Court.—O’Gorman, J.
—This litigation has presented itself in so many different shapes, and has, in its various stages and aspects, so frequently received the attention of this court, that a brief statement of the questions that have been heretofore considered and passed upon, is necessary in order to understand the present condition of this action and the precise questions involved in this appeal.
This action was begun on or about December 14, 1882.
It was brought by the plaintiff, as a stockholder in the Western Union Telegraph Company, in behalf of himself and all other stockholders in said company similarly situated, who might join him in the action and be made parties plaintiff therein.
The chief equitable relief sought, as set forth in the prayer of the complaint, was that the Western Union Telegraph Company should be forever restrained from paying any dividend upon $38,926,590 of stock of that company, *145 claimed to have been illegally issued, under provisions of a contract dated January 19,1881, between that company and the Atlantic and Pacific Telegraph Company and the American Union Telegraph Company; and also that payment. of the same pendente lite should be enjoined.
The purpose of the contract in question was the acquisition by the defendants, the Western Union Telegraph Company, of all the property of the two other telegraph companies.
It provided, among other things, that the Western Union Telegraph Company, the defendants, should give in payment to the American Union Telegraph Company for all its property, franchises, &o., except the franchise to be a corporation, 150,000 shares of the capital stock of the Western Union Telegraph Company of the par value of $100 each, to' be issued and to be exchanged for shares of the American Union Telegraph Company, as in said contract provided for, and should give in payment to the Atlantic and Pacific Telegraph Company, for all its property, franchises, &c., except the franchise to be a corporation, 8,400 shares of the capital stock of the Western Union Telegraph Company, the same to be issued and to be exchanged for shares of the Atlantic and Pacific Telegraph Company, as also in said contract provided.
The contract further provided that the Western Union Telegraph Company should cause its capital stock to be increased to the sum of $80,000,000 by an addition of $38,926,590, represented by shares of capital stock of $100 each—$15,526,590 in shares of said capital stock to be issued and delivered to the then holders of its shares, the said shares being thus issued to. represent its investment of earnings in the purchase, construction and equipment of additional line wire and general plant since the first day of July, 1866.
The plaintiff in his complaint goes on to state that, in pursuance of said contract, the defendant company had caused its capital stock to be increased to the sum of $80,000,000, and had issued of such increased capital stock *146 to the stockholders of the American Telegraph Company, $15,000,000; to the Atlantic and Pacific Telegraph Company, $8,400,000 of said increased capital stock ; and had also issued $15,526,590 of said increased capital stock to the holders of ,its own shares; and these issues of stock the plaintiff claims, in his complaint, to have been without authority of law and absolutely void
Plaintiff further avers, that the defendant corporation had distributed the stock so issued among stock brokers ; that • said stock had been dealt in publicly—transferred from time to time since its issue—and is now outstanding to the amount of $38,926,590, that the defendant company has paid dividends at the rate of l-¡- percent, per quarter, as well on this stock which plaintiff claims to have been illegally issued, as on its other and lawfully issued stock, and that the directors of the defendant corporation had declared such a dividend payable on January 15, 1882, that they threatened to anticipate that date of payment, unless restrained by the court, to the irremediable injury of the plaintiff and all the lawful stockholders in said defendant corporation, and that these things had been done, although the superior court, in a previous action brought to prevent the consummation of said contract, begun on February 12, 1881, had declared such issue to be illegal, and said contract to be void.
Immediately on the commencement of this present action, the plaintiff moved for an injunction restraining the defendants pendente lite from paying any dividend on any of the said $15,526,590 of ‘capital stock heretofore divided between the stockholders of the company, or of the said $23,400,000 capital stock issued and distributed to the stockholders of the American Union, and Atlantic and Pacific Telegraph Companies.
This motion, on which the order was granted, which is the subject of this appeal, was heard at special term of this court,, on December 26, 1882, and defendants used on the motion affidavits setting forth these facts, viz.: That on the trial of the said previous action, which was had before *147 Judge Truax, without a jury, it was found that the above mentioned contract, and the acts of the defendants, and of its officers and directors in furtherance of the same,, were lawful and valid ; that since that decision the entire $80,000,000 of the capital stock of said Western Union Telegraph Company had been issued, with the exception of about 700 shares, and had passed into the hands of a large number of persons ; that if the payment of dividends thereon were prevented, great loss would result from depreciation of the stock of the defendant company in the markets of the world; that it was impossible to distinguish the shares of stock which form part of the increase made in 1881 from the shares of capital stock which had been previously issued; and that it was impossible to restore the stockholders of the defendant company to the condition in which they were, at or prior to said increase of capital stock ; that by reason of the many transfers, the different kinds of stock had been so mingled as to be wholly undistinguishable, in respect to the circumstances of its issue, or the persons to whom i t had been originally issued.
The defendants also set forth, as part of their case on the motion, the findings of Judge Truax on the trial of that action, which resulted in his dismissing the plaintiff’s complaint bn the merits and vacating an order of injunction, pendente Hie thereupon made in that action.
. The learned judge found among other things, as matters of fact:
That the property, franchises, &c., of 'the American Union Telegraph Company were fully and fairly worth, on January 19, 1881, the sum of $15,000,000 ; that the property, franchises, &c., of the Atlantic and Pacific Telegraph Company were fully and fairly worth, on that day, $8,400,-000; that the actual value of the investments of surplus earnings of the Western Union Telegraph Company as they existed on January 19, 1881, was more than the sum of, $15,526,590 ; that the investment of such surplus property had been, from time to time, reported to the stockholders of the Western Union Telegraph Company, and approved *148 by them, and no one of the stockholders had ever dissented therefrom ; that at a meeting of the directors of the Western Union Telegraph Company, held on March 26, 1883, they affirmed and redeclared a dividend as of January 19, 1881, on the amount of $15,526,590, payable to the stockholders of the defendant corporation in certificates of stock.
From the judgment entered on these findings, the'plaintiff appealed to the general term of this court, and that appeal was decided on November 6, 1882, by the reversal of the judgment and the order that a new trial should be had.*
Written opinions were delivered by Freedman, Presiding Judge, and by Judge Abnoux ; Judge Russell concurring with Judge Fbeedman.
For the purposes of that appeal Judge Fbeedman accepted the facts as found by the learned trial judge, and held: „
That the individual share holders could not insist on a dividend in cash of the earnings of the company which were invested in property, because they had approved the investment:
That the shareholders who had consented to that investment had consented to turn earnings into capital stock.
That the acts of the defendant complained of had all , occurred before plaintiff had acquired title to the stock by purchase.
Taking the facts 'as found by the learned trial judge, and also considering the large powers granted to telegraph companies by the Legislature of this State, Judge Freedman regarded the appeal then under the consideration of the general term, as presenting only the naked question of law, whether the agreement, of January 19; 1881, was contrary to law. '
He held, that the power of the Western Union Telegraph Company to create and issue to the two other telegraph companies, stock in payment for their lines, could not be disputed.
*149 Tiie distribution of the $15,526,590 capital stock among the shareholders of the Western Union Telegraph Company, however, and tiie payment of dividends thereon, he held to be without consideration and wholly illegal, as violating the following provision of law:
“ It shall not be lawful for the directors or managers of any incorporated company in this State to make dividends, excepting from the surplus profits arising from the business of such corporation ; and it shall not be lawful for the directors or managers of any such company to divide, withdraw, or in any way pay to the stockholders, or any of them, any part of the capital stock of such corporation, or to reduce the capital stock without the consent of the Legislature” (2 Rev. Stat. [6 ed.] 398).
As this illegality entered into and permeated the agreement of January 19, 1881, the agreement itself could not be sustained ; and that as the case then stood, the plaintiff was entitled to an adjudication declaring the illegality of the agreement of January 19, 1881, and enjoining the distribution of the $15,526,590 of stock.
The earnings or surplus profits which with the assent of the stockholders, had been from time to time used and absorbed in the business of the corporation, the learned judge held to be no longer profits, but to have become capital stock, and as such subject to the prohibition of the statute.
The judgment of the special term in that action was therefore reversed, and a new trial ordered.
In that decision the general term was unanimous, and by that decision, unless it be reversed by a higher tribunal, or unless new facts appearing in the present action present8 different questions of law, this court holds itself bound.
The order of the special term, here appealed from, enjoined only the payment of dividends on the $15,526,590 shares of capital stock issued and distributed among the shareholders, before the decision of the general term on November 6,1882, above referred to, and claimed to represent past accretions of earnings to the capital of the company.
Of these shares, as has been shown above, all but 700 *150 had been issued and distributed, and with that issue, the injunction order now appealed from has no concern.
The plaintiff alleged in his complaint, that dividends to a large amount have already been paid to the stockholders on the whole amount of stock issued under the agreement of January 19,1881, at the rate of 1|- per cent.; that the amount of dividends so paid amounted to $4,087,291.95 ; and he demanded -judgment that payments of such dividends, so far as illegally issued, should be restrained during the pending of the action.
On a resettlement of the order, and it appearing to the .court that the said stock to the amount of $5,526,590 had been issued by the defendants, except about 700 shares, the court ordered that, upon the defendants giving bonds conditioned, as in the ordér set forth, the defendants might have leave to pay the dividends on said $15,526,590, declared by the directors of the defendant company on December- 1882, in respect to such of said stock as the defendants are unable to separate from the balance of the stock of the defendant corporation, such provision not to apply to any of said stock which remains in the hands of the parties to whom said shares were originally issued, or shares, the title to which is known to be derived from such parties.
The force and effect of this injunction are thus circumscribed and limited ; and it remains for this court now to decide, bearing in mind the former decision of its general term, whether the learned judge in granting this order has erred.
The court at general term then held that the issue of 'shares of capital stock to the stockholders of the Western Union telegraph Company was a violation of the statute law of the State. The payment of dividends on such unlawfully issued stock is also illegal.
The plaintiff must be regarded in this action as asserting only his own individual rights, as owner of 200 shares of capital stock and entitled to equitable relief, only so far as these rights are invaded or threatened with invasion, and because of the pecuniary loss which he may sustain there *151 from. But no matter how small his pecuniary interest may be, it is entitled to protection from the court. It may well be, that the granting of this injunction could, under the peculiar circumstances of this case, afford him but little protection or relief, and the denying of it could inflict on him but little injury.
These, however, are not questions with which the court has any legitimate concern. Its only duty is to see that the law be properly applied to the protection of the legal and equitable rights of the parties in this case.
Neither is the fact that these unlawfully issued shares may have reached the hands of some Iona fide holders, to be regarded as affecting the question. If their rights are invaded, they must seek such legal remedy or relief, as on the facts of each case, they may be found to be entitled to.
It is also urged on the part of the defendants, that the statute, the provisions of which are claimed to have been violated by the issue of the said shares of stock to stockholders of the defendant corporation, has, in creating the offense, also prescribed the appropriate and only remedy, by providing that the directors assenting to the wrongful act, shall be jointly and severally liable to the corporation and to the creditors thereof, in the event of its dissolution, to the full amount of the capital stock of said company illegally issued.
This argument does not seem to us conclusive on this appeal.
The principal of law invoked in its support may confine the remedy for the wrong, when committed, to that provided in the act, but it does not, in our opinion, limit or impair the powers of a court of equity to restrain pendente lite the commission of the illegal act, while it is threatened, or inchoate, or incomplete.
The material facts now under consideration are the same as those before the general term in the former action.
The granting or denying the order of injunction, now appealed from, was within the judicial discretion of the court at special term ; and if the order was, as we believe it *152 was, in accord with the decision of the general term and was the logical consequence of that decision, this court feels bound to sustain it.
The order appealed from is therefore affirrped, with $10 costs.
Sedgwick, Ch. J., concurs ; Ingraham, J., dissents.

 See 48 Super. Ct. 349.